**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4321
_____

JOSE MIGUEL MINAYA
a/k/a Miguel Minaya

JOSE MINAYA,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent
_____

On Petition for Review from the Board of Immigration Appeals
BIA-1 No. A 043 847 709
Immigration Judge: The Honorable Eugene Pugliese
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
November 8, 2011

Before: SCIRICA, SMITH, and JORDAN, *Circuit Judges*

(Filed: December 2, 2011)
_____

OPINION
_____

SMITH, *Circuit Judge*.

Petitioner Jose Miguel Minaya seeks review of a determination by the Board

of Immigration Appeals (BIA) that his conviction under 18 U.S.C. § 371 for

1

conspiring to commit wire fraud constitutes an aggravated felony under 8 U.S.C. §§ 1101(a)(43)(M)(i) and (U), thereby rendering him ineligible for cancellation of removal. We will deny the petition for review.[1]

I.

On March 21, 2005, a federal grand jury for the Southern District of New York returned a one-count indictment against Minaya and four other individuals, charging them with violating 18 U.S.C. § 371 by knowingly conspiring to commit the offense of wire fraud in violation of 18 U.S.C. § 1343, in order to obtain money and property from an unidentified car dealership in Englewood, New Jersey. The indictment alleged several overt acts in furtherance of the conspiracy, including averments that the car dealership sustained losses in excess of $10,000.00 when Minaya or one of his co-defendants used credit cards to pay the balance due on four automobiles they purchased. Minaya pleaded guilty to the charge. The District Court imposed a sentence of five months of imprisonment and five months of home confinement. In addition, the judgment of conviction ordered Minaya to pay restitution in the amount of $97,872.

In June of 2006, Minaya was personally served with a Notice to Appear,

---

[1] Section 1252(a)(2)(C) strips us of jurisdiction to review a final order of removal for criminal aliens convicted of an aggravated felony. 8 U.S.C. § 1252(a)(2)(C). Nonetheless, we have jurisdiction under § 1252(a)(2)(D) as we are presented with a question of law. Because the question of whether Minaya's § 371 conviction qualifies as an aggravated felony presents a legal issue, our review is plenary. *Thomas v. Attorney Gen.,* 625 F.3d 134, 141 (3d Cir. 2010).

charging him with being removable for having committed a crime involving moral turpitude. In response, Minaya filed an application for cancellation of removal. The government asserted that Minaya was ineligible for cancellation of removal under 8 U.S.C. § 1229b(a)(3) because his federal conviction constituted an aggravated felony under 8 U.S.C. § 1101(a)(43)(M)(i). Minaya argued that he was convicted of a hybrid offense under *Nugent v. Ashcroft*, 367 F.3d 162 (3d Cir. 2004), which held that Pennsylvania's criminal offense of "theft by deception" does not constitute an aggravated felony unless it satisfies the criteria of both 8 U.S.C. §§ 1101(a)(43)(G)[2] and (M)(i).[3] Because Minaya's sentence of five months imprisonment did not satisfy the requirement under (a)(43)(G) for one year of imprisonment, Minaya asserted he was not subject to removal as an aggravated felon.

The IJ found Minaya's argument persuasive. The BIA sustained the government's appeal. The BIA concluded that *Nugent* was inapplicable because Minaya's offense did not "require proof of a theft." It further noted that the guilty plea colloquy on the § 371 conspiracy, as well as the sentencing transcript,

---

[2] This subsection provides that aggravated felony includes "a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year[.]" 8 U.S.C. § 1101(a)(43)(G).

[3] "[A]n offense that--(i) involves fraud or deceit in which the loss to the victim or victims exceeds $10,000" also qualifies as an aggravated felony. 8 U.S.C. § 1101(a)(43)(M)(i).

established that the loss exceeded the $10,000 monetary threshold for (a)(43)(M)(i). Accordingly, it concluded that Minaya had been convicted of an aggravated felony under § 1101(a)(43)(M)(i), thereby rendering him ineligible for cancellation of removal. It remanded the case to the IJ for further proceedings.

Shortly thereafter, Minaya's federal public defender contacted the federal sentencing court to advise that the automobile dealership targeted by the § 371 conspiracy had not sustained a loss. The letter described the offense, and explained that the four vehicles, which had been purchased using the credit cards, had been recovered. In explaining why no loss had been sustained, the public defender explained

> that there was no loss on either the Tahoe and [sic] Corvette, both of which were recovered by the car dealer. Although the car dealer was paid by insurance approximately $33,225 for losses on the Lexus and Mustang, both of which were recovered, and neither of which depreciated in value, the Government and defense agree that there was no cognizable loss suffered by the dealership. Prior to Minaya's fraudulent conduct, the dealership owned the Tahoe and Corvette. After the fraud the dealership recovered both cars and sustained no loss. Thus, when the Lexus and Mustang were seized, the dealership had no ownership interest in either car.

Two weeks later, on June 26, 2008, the District Court, without explanation, amended Minaya's judgment, eliminating any requirement for restitution.

On remand before the IJ, Minaya argued that his conviction no longer qualified as an aggravated felony because the amended judgment, which eliminated the restitution obligation, reflected that no loss had been sustained. He

4

asserted that under the Supreme Court's intervening decision in *Nijhawan v. Holder*, 129 S. Ct. 2294 (2009), an actual loss was required for a conviction to qualify as an aggravated felony under § 1101(a)(43)(M)(i). The IJ rejected Minaya's argument. He noted that (a)(43)(U) makes attempts or conspiracies to engage in one of the listed substantive offenses in (a)(43) an aggravated felony.[4] Because Minaya had been convicted of a § 371 conspiracy, which "does not require that the crime actually have been completed and brought to full fruition," the IJ reasoned that no actual loss is required. Nonetheless, he found that there "was a loss in this case because the crime proceeded far enough . . . that the dealership for a brief period of time was deprived of the cars that it had and those cars were taken from the lot and then only subsequently recovered. So one could certainly view this as there having been a loss." Alternatively, the IJ concluded that the law "just requires an intended loss."

Minaya filed a timely notice of appeal with the BIA. The BIA dismissed Minaya's second appeal. Minaya filed a timely petition for review.

## II.

Minaya bears the burden of establishing his eligibility for relief in the form of cancellation of removal. 8 U.S.C. § 1229a(c)(4)(A)(i); *see Jean-Louis v. Attorney Gen.*, 582 F.3d 462, 464 n.2 (3d Cir. 2009). He contends that he is

---

[4] Subsection (U) makes "an attempt or conspiracy to commit an offense described in this paragraph" an aggravated felony. 8 U.S.C. § 1101(a)(43)(U).

5

eligible for cancellation of removal because his conviction must be viewed through the lens of *Nugent*, which would mean that he must satisfy the criteria of both §§ 1101(a)(43)(G) and (M)(i).  Because his conviction did not result in a year of imprisonment as required by (a)(43)(G), his conviction would not constitute an aggravated felony.  Alternatively, if Minaya's conviction is not a hybrid offense, he challenges the determination that for purposes of § 1101(a)(43)(M)(i) the monetary threshold of a $10,000 loss has been met.

A.

In *Nugent*, the petitioner was served with a notice to appear charging him with being removable on the basis that his Pennsylvania conviction for "theft by deception" qualified as an aggravated felony under § 1101(a)(43)(G).  367 F.3d at 163-64.  Nugent argued that his conviction did not constitute a "theft offense" under (a)(43)(G) because it was an offense involving fraud and deceit under (a)(43)(M)(i).  Because his offense failed to involve more than the $10,000 loss required by (a)(43)(M)(i), Nugent submitted that he was not removable as an aggravated felon. *Id.* at 169.

The court's analysis began with the formal categorical approach, comparing the elements of the state law offense to the terms of the federal statute.  Because (a)(43)(G)'s phrase "theft offense" was undefined, the court considered whether the common law provided a sufficient definition to use for comparison purposes.

6

The court noted that the common law did not use the term theft, but instead defined the crime of larceny. It concluded that Nugent's offense, which involved writing checks for funds he knew were nonexistent, would not constitute the common law offense of larceny because the property had to be tangible and capable of being taken and carried away. *Id.* at 171. Because the common law did not answer whether Nugent's state law offense was a "theft offense" under (a)(43)(G), *id.* at 172, the court considered more contemporary definitions to "determine whether either or both of these 'aggravated offense' provisions applie[d] to offenses under Pennsylvania's theft by deception statute." *Id.* at 173.

After examining the decisions of several of our sister courts of appeals, the court agreed "that it was Congress' intent for a 'theft offense' to include more than what was considered larceny at common law[.]" *Id.* The court noted that the Seventh Circuit's definition of theft – "a taking of property or an exercise of control over property without consent" – had been adopted by the Ninth Circuit and relied upon by this court in an unpublished decision. *Id.* at 174 (citations omitted). The *Nugent* panel implicitly adopted this definition,[5] stating that "given this broad definition, Nugent's bad check transaction for which he was convicted under the Pennsylvania theft by deception status was a 'theft offense'" under

_____

[5] *See Bobb v. Attorney Gen.*, 458 F.3d 213, 224 (3d Cir. 2006) (noting that in *Nugent* "[w]e concluded that a 'theft offense' under subsection (G) could be defined as 'a taking of property or an exercise of control over property without consent'").

(a)(43)(G).  *Id.*

The *Nugent* court proceeded, however, to address Nugent's argument that his offense was an offense involving fraud or deceit under (M).  It rejected the "either or" arguments of the parties and held that "Congress' intent was for *both* G and M(i) to apply to an 'offense' involving 'theft' *and* 'fraud or deceit,' and thus the requirements of both provisions must be fulfilled for such an offense to qualify as an aggravated felony for purposes of the INA."  *Id.* at 176.  The court reasoned that

> [i]t is beyond cavil that the particular or subclass Pennsylvania statute under which Nugent was convicted falls within the purview of "a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(G). The sole question for decision is whether Pennsylvania's *theft by deception statute*, which is *subsumed* in Section 1101(a)(43)(G) as a *particular "theft offense*," also comes *within the universal (or class) nature* of "an offense" bottomed on fraud or deceit under Section 1101(a)(43)(M)(i). We hold that it does.

367 F.3d at 177 (emphasis added).  The court determined that in enacting § 1101(a)(43), Congress knew the distinction between the common law offense of larceny and the statutory offense of false pretenses.  It concluded that "when Congress defined a particular species of aggravated felony in Section 1101(a)(43)(M)(i) as 'an offense that . . . involves fraud or deceit' it had in mind, *inter alia*, the statutory offense of false pretenses."  *Id.* at 177.

With that in mind, the court turned to the Pennsylvania statute for theft by

8

deception, which had been adopted word for word from the Model Penal Code, and the ALI commentaries for that offense. *Id.* at 178. The court concluded that the "ALI makes clear that 'theft by deception' states the elements of the statutory offense of false pretenses." *Id.* at 178. It pointed out that the statute also used "various forms of the word 'deceive'" and concluded that "[b]y its very language, the Pennsylvania statute is bottomed on 'fraud' and 'deceit.'" *Id.* The Court declared that "[b]ecause the particular Pennsylvania statute is designed entirely on all-embracing concepts of fraud or deceit – various forms of the word 'deceive' appear five times and 'false impression' three times – it is precisely the particular type of theft contemplated in the universal class of offenses set forth in the fraud or deceit [s]ubsection[.]" *Id.* at 179.

Based on the above, we conclude that the BIA did not err in concluding that *Nugent* was inapplicable. The *Nugent* Court analyzed the statute of conviction to determine whether it satisfied the definition of "theft offense" under subsection (G). In that case, the offense not only had the title "theft by deception," it also required proof of a taking of, or an exercise of control over, property. The § 371 offense of conspiring to commit wire fraud, however, does not require proof that the conspirators took another's property or exerted control over another's property. Instead, the elements of the § 371 offense of

> conspiracy to violate federal law are: (1) an agreement to commit an
> offense proscribed by federal law[, here, wire fraud]; (2) the

9

defendants intentionally joining in the agreement; (3) one of the conspirators committing an overt act; and (4) an overt act in furtherance of the conspiracy.

*United States v. Rigas*, 605 F.3d 194, 206 n.9 (3d Cir. 2010) (en banc). Thus, Minaya's § 371 conviction cannot be classified as a "theft offense" under subsection (a)(43)(G).

Minaya's § 371 conviction does satisfy the criteria of subsection (M)(i). "In a conspiracy, two different types of intent are generally required – the basic intent to agree, which is necessary to establish the existence of the conspiracy, and the more traditional intent to effectuate the object of the conspiracy." *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 443 n.20 (1978). Accordingly, in this case there had to be proof of not only the intent to agree, but also the intent to commit the offense of wire fraud in § 1343. This demonstrates that a conviction under § 371 to commit the offense of wire fraud in violation of § 1343 satisfies subsection (M)(i)'s requirement that the offense involve fraud or deceit.

In an effort to convince us that his conviction is a hybrid offense under *Nugent*, Minaya, contrary to the categorical approach, emphasizes the particular facts of his offense, notes that the District Court viewed Minaya's federal conviction as involving the same conduct as an earlier New Jersey conviction for theft by deception, and submits that § 1343 makes it a crime to obtain property by false pretenses. This argument is not persuasive. It conveniently focuses on the

object of the conspiracy, *i.e.*, the wire fraud offense in § 1343, instead of Minaya's offense of conviction, which is the § 371 conspiracy to commit the offense of wire fraud against the United States. The elements necessary to prove a § 371 conspiracy, however, are not the same as the elements of Minaya's earlier New Jersey theft by deception conviction.[6]

In sum, Minaya's conviction under 18 U.S.C. § 371 for conspiring to commit an offense against the United States, namely wire fraud in violation of § 1343, is not a theft offense. For that reason, it cannot be a hybrid offense, which would require the alien to satisfy the requirements of both subsection (G) and subsection (M)(i).

## B.

There is no dispute in this case that Minaya's offense resulted in an initial loss exceeding $10,000. Indeed, the transcript of the guilty plea proceeding contains Minaya's admission that his conduct resulted in a loss of more than $10,000 as required by § 1101(a)(43)(M)(i). The sentencing court found that he

---

[6] In our view, Minaya's argument requires that we conduct the analysis set forth in *Nugent* in reverse order. That is, he seeks to fit his § 371 conviction, which easily qualifies as an offense under the broader, universal class in (a)(43)(M)(i) for fraud and deceit crimes, into the narrower, limited, particular subclass in subsection (G). But *Nugent*'s analysis explains that it is only a particular, limited subclass that can be subsumed into a universal class such as (M)(i). 367 F.3d at 177; *see Bobb*, 458 F.3d at 226 (explaining that the "clearest reading of *Nugent* is that it is restricted to classificational schemes in which one classification *is entirely a subset of another*" (emphasis added)). Thus, the broader, universal class in (M)(i) cannot be a subdivision of (G), which is a narrower, particular subclass.

caused a loss of between $70,000 and $120,000. Restitution was ordered in the amount of $97,872.

Nonetheless, Minaya contends that his federal conviction is not an aggravated felony under § 1101(a)(43)(M) because the loss did not exceed the $10,000 threshold in light of the amended judgment eliminating his obligation to pay restitution. In his view, the Supreme Court's decision in *Nijhawan v. Holder*, 129 S. Ct. 2294 (2009), requires proof of an actual loss, not a potential or intended loss, before a conviction qualifies as an aggravated felony.

Minaya's reliance on *Nijhawan* is misplaced. The Supreme Court did not need to consider whether a potential loss was sufficient under (a)(43)(M)(i) and (U) as the case involved an actual loss of millions. 129 S. Ct. at 2298. We recognize that Minaya contends that, consistent with the procedure set forth in *Nijhawan*, *id.* at 2301, he adduced evidence at the IJ proceeding to demonstrate that no loss was sustained. We disagree. The amended judgment eliminating the obligation of restitution does not negate that a loss was sustained. Rather, in the absence of any findings by the sentencing court, the amended judgment simply reflects that Minaya is no longer obligated to pay restitution given the fortuitous recovery of the automobiles and the payment of the insurance proceeds. *See Munroe v. Ashcroft*, 353 F.3d 225, 227 (3d Cir. 2003) (instructing that the "amendment of the judgment simply changed the amount of restitution; it did not

12

involve a state-court finding as to the amount of loss").

## III.

Minaya's conviction for a § 371 conspiracy to commit the offense of wire fraud in violation of § 1343 did not require proof that another's property was taken without that person's consent. As a result, the § 371 offense is not a "theft offense" under § 1101(a)(43)(G). Because § 1101(a)(43)(G) is not applicable, Minaya's § 371 conviction cannot be a hybrid offense under *Nugent*. The conviction under § 371 to commit the offense of wire fraud in violation of § 1343 does constitute an aggravated felony involving fraud or deceit under §§ 1101(a)(43)(M)(i) and (U). Accordingly, we will deny the petition for review.